## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**LARRY WOODY**

                     **Plaintiff,**

**-vs**

**SEARS, ROEBUCK AND COMPANY,**

                     **Defendant.**

**Case No. C-3-05-368**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER GRANTING WOODY'S MOTION FOR SUMMARY JUDGMENT (Doc. #11); OVERRULING SEARS'S MOTION FOR SUMMARY JUDGMENT (Doc. #10) AND FINDING SEARS'S MOTION TO STRIKE MOOT (Doc. #19)**

---

This dispute arises from the employment of Plaintiff Larry Woody ("Woody") by Defendant Sears, Roebuck and Company ("Sears"). Woody was employed by Sears from August 28, 1978, until he was discharged on April 19, 2003. Woody's Complaint alleges that the termination of his employment by Sears constitutes a wrongful discharge in violation of Ohio public policy.

Both Parties have filed a Motion for Summary Judgment. (Doc. #10, 11.) Both Parties have responded to the other Party's Motion for Summary Judgment (doc. #16, 17), and Woody has filed a Reply (doc. #18). Sears has not replied within the allotted time but has filed a Motion To Strike Plaintiff's Reply and Affidavit (doc. #19) to which Woody has responded (doc. #20). This matter is, therefore, ripe for decision. A summary of the facts will first be set forth followed by the standard of review for motions for summary judgment and an analysis of the Cross Motions.

## FACTUAL SUMMARY

The relevant facts in this matter are not in dispute. The Parties have filed a Joint Stipulation of facts ("JS") that forms the basis for the following summary.

Woody was employed by Sears as a service technician beginning August 28, 1978. (JS 5.) On January 4, 2002, Woody was injured in a motor vehicle accident which occurred within the scope of his service technician position. (Id. 6.)

As a result of a neck injury received in the accident, Woody began receiving Ohio Workers Compensation temporary total disability ("TTD") benefits. (Id. 7, 8.) Woody did not work and received TTD benefits from January 23, 2002, through April 1, 2002. (Id. 8.) He returned to work effective April 2, 2002, and worked until June 21, 2002, when he again went off work and began again receiving TTD benefits. (Id. 9.) He received TTD benefits from June 21, 2002, until January 27, 2003. (Id. 10.)

Woody's TTD benefits were terminated as of January 27, 2003, pursuant to a motion made by Sears and decided by a district hearing officer of the Industrial Commission. (Id. 10.) A staff hearing officer of the Industrial Commission then affirmed the district hearing officer's decision that Woody's condition had reached maximum medical improvement and the associated conclusion that Woody's TTD benefits should be terminated. (Id. 11.)

Even though his TTD benefits had been terminated as of January 27, 2003, Woody did not return to work. (Id. 10.) Sears advised Woody via a letter dated March 18, 2003, that, pursuant to its Workers Compensation Leave of Absence Policy (the "Policy"), his leave was scheduled to expire on April 19, 2003. (Id. 15, 16.) In computing the allowed length of the workers compensation leave of absence, Sears included both time periods that Woody was

receiving TTD benefits and the time period after the TTD benefits ceased and Woody did not return to work. (Id. 14, 15.)

The Policy provides that Sears will place "associates" on a workers compensation leave of absence when they are unable to work due to an occupational illness or injury sustained at Sears. (Id. Ex. C.) The maximum length of leave, according to the Policy, is twelve months from the last day worked. Further, "an associate who returns to work for less than six months should be returned to leave of absence status only if the associate has not been absent for a full twelve months. (Id. 13.) The length of leave remaining to the associate will be the difference between the amount of time already absent and the twelve months. (Id.)

Woody's Counsel responded to Sears's March 18 letter on April 19, 2003. (Id. 17.) In this response, Woody's Counsel indicated that Woody had undergone cervical disc surgery on March 3, 2003, and was not expected to be able to return to work for two to three months. (Id. 17.) Woody's Counsel also requested a detailed explanation of the reason and basis for Sears's notice of termination. (Id. Ex. E.)

Sears responded in a letter dated May 8, 2003, with an explanation of the Policy. (Id. 18.) On May 23, 2003, Woody's Counsel replied indicating that several issues remain to be addressed and that Woody would be ready to return to work one year from his last day worked. (Id. Ex. G.) On June 4, 2003, Sears responded indicating that Woody's employment was terminated on April 19, 2003 pursuant to the Policy. (Id. Ex. D, H.)

Woody was not receiving TTD at the time Sears terminated his employment. (Id. 21.) The analysis now turns to the standard of review for motions for summary judgment.

**STANDARD OF REVIEW**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

Woody's claim is brought pursuant to Ohio law. In addition to applying the federal procedural standard for motions for summary judgment, as a federal court located in Ohio exercising diversity jurisdiction, this Court must apply Ohio substantive law unless the law of another state is specifically implicated. *Hisrich v. Volvo Cars of N. America, Inc.*, 226 F.3d 445,

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

Woody's claim is brought pursuant to Ohio law. In addition to applying the federal procedural standard for motions for summary judgment, as a federal court located in Ohio exercising diversity jurisdiction, this Court must apply Ohio substantive law unless the law of another state is specifically implicated. *Hisrich v. Volvo Cars of N. America, Inc.*, 226 F.3d 445,

449 (6th Cir. 2000). This Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)).

To the extent that the highest court in Ohio has not addressed the issue presented, this Court must ascertain from all available data, including the decisional law of Ohio's lower courts, what Ohio's highest court would decide if faced with the issue. *Id.; Bailey v. V. & O. Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Finally, where Ohio's highest court has not addressed the issue presented, a federal court may not disregard a decision of an Ohio appellate court on point unless the federal court is convinced by other persuasive data that the highest court of Ohio would decide otherwise. *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989). The analysis now turns to the Parties' Motions for Summary Judgment.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

Woody argues that he is entitled to summary judgment because the termination of his employment by Sears violated Ohio public policy. His termination violated Ohio public policy, according to Woody, because he was penalized for missing work due to an injury compensable under Ohio's Workers' Compensation laws. Woody's claim is premised upon the Ohio Supreme Court decision *in Coolidge v. Riverdale Local School District*, 797 N.E.2d 61 (Ohio 2003), *reconsideration denied*, 802 N.E.2d 155 (Ohio 2004).

Sears argues that it is entitled to summary judgment because Woody was terminated from his employment for failing to return to work at the expiration of the one-year leave of absence provided under the Policy. Sears also argues that Woody cannot factually or legally support his

public policy claim.

A tort action for wrongful termination in violation of Ohio public policy was first established in the case of *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 551 N.E.2d 981 (Ohio 1990). *Kusens v. Pascal Company, Inc.*, Case Nos. 04-3570 and 04-3682, 2006 WL 1226413 at *12 (6th Cir. May 9, 2006). The *Greeley* court held that, "… public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute" and thereby established what has come to be known as a *Greeley* claim. *Id.* (citing *Greeley*, 551 N.E.2d at 986).

Some years after *Greeley* was issued, the Ohio Supreme Court decided *Coolidge*. In *Coolidge*, an Ohio public school teacher suffered a work-related injury and was receiving TTD benefits. *Kusens,* 2006 WL 1226413 at *14. When Coolidge, the teacher, exhausted all available leave, the school board terminated her employment due to continued absence from work. *Id.* Coolidge then filed suit claiming that her discharge was in violation of Ohio public policy as set forth in the Ohio Workers' Compensation Act citing both the Act's TTD provision and the anti-retaliatory provision. *Id.* Based upon Coolidge's argument and existing law, the Ohio Supreme Court held that, "an employee who is receiving TTD compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition." *Coolidge*, 797 N.E.2d at 69-70.

Prior to *Coolidge*, Ohio recognized *Greeley* public policy claims based upon the Workers' Compensation Act only when the claim was predicated upon the filing of a workers' compensation claim. *Kusens*, 2006 WL 1226413 at *14. "In *Coolidge*, the Ohio Supreme Court determined that the public policy embodied within the Workers' Compensation Act warranted

extending the coverage of the anti-retaliation statute to persons already receiving TTD benefits, as well." *Id.* Also, prior to *Coolidge*, Ohio public policy claims could be brought only by at-will employees. *Id*. In *Coolidge*, the Ohio Supreme Court determined that individuals who were not at-will employees could bring public policy claims based upon the Workers' Compensation Act. *Id.*

*Coolidge* specifically addressed the discharge of an employee who was receiving TTD benefits at the time of the discharge. Yet, in this case, Woody was not receiving TTD benefits when he was discharged from his employment.

At least one Ohio appeals court has interpreted *Coolidge* to apply narrowly, thus, only to an individual who is terminated while actually receiving TTD benefits and not to an employee who is terminated after returning to work.[1] *Brooks v. Qualchoice, Inc.*, 2005 WL 2386479 at *2 (Ohio Ct. App. Sept. 29, 2005). However, at least one Ohio appeals court has interpreted *Coolidge* more broadly finding that an employer violates public policy when it discharges or otherwise penalizes a temporarily and totally disabled employee. *Bickers v. Western Southern Life Insurance Company, Inc.*, Case No. C-040342, 2006 WL 305442 at *2 (Ohio Ct. App. Feb. 10, 2006). Also, at least one Federal district court has interpreted *Coolidge* to apply more

---

[1] Sears unsuccessfully argues that "both Federal and Ohio case law has consistently held that a claimant must be receiving or have a right to receive workers' compensation benefits in the nature of TTD in order to pursue a retaliation based public policy claim as rendered by the Coolidge court and its progeny." However, all of the cases cited by Sears, except for *Salyer* and *Brooks* cited above, are distinguishable. *Covucci v. Service Merchandise Co., Inc.* involved a *Greeley* claim and not a *Coolidge* claim. 115 Fed.Appx. 797 (6th Cir. 2004), *cert. denied*, 544 U.S. 906 (2005). *Welty v. Honda of America Mfg., Inc.* involved a workers' compensation claim that was made after the employee was discharged unlike here where the claim was made before discharge. 411 F.Supp.2d 824 (S.D.Ohio 2005). *Hall v. ITT Automotive* involved a discharge in retaliation for filing a workers' compensation claim that was analyzed as an employment discrimination claim and not a *Coolidge* claim. 362 F.Supp.2d 952 (N.D.Ohio 2005). Finally, in *State ex rel. Luther v. Ford Motor Company Batavia Transmission Plant*, the court addressed the appeal of a decision denying TTD benefits and not a *Coolidge* claim. Case No. 04AP-1127, 2006 WL 93103 (Ohio Ct. App. Jan. 17, 2006).

broadly beyond those receiving workers' compensation benefits at the time they are discharged to those who are discharged because they were off work and receiving benefits and returned to work sometime prior to when they were terminated. *Salyer v. Honda of America Mfg., Inc.*, 2005 WL 2338786 at *10 (S.D.Ohio Sept. 23, 2005). Therefore, the Ohio Supreme Court's reasoning in *Coolidge* must be examined in an attempt to ascertain what the Ohio Supreme Court would decide regarding Woody's claim.

      In *Coolidge*, a unanimous Ohio Supreme Court reasoned:

> [W]e agree with the minority of courts that employees who are temporarily and totally disabled as a result of their work-related injuries have a right not only to the compensation provided in the act, but also to whatever period of absence from work is deemed medically necessary to complete their recovery or stabilize their injuries.
>
> …
>
> A temporary and totally disabled employee is by definition physically unable to perform the duties of his or her former position of employment. Considering that the statute is designed to provide the injured worker with the necessary means to subsist during a period of TTD, it would be inconsistent to allow the employer to fire such a worker solely because of the disability for which the employee is being compensated.
>
> …
>
> In our opinion, the policy of protection embodied in the Workers' Compensation Act can be effectuated only if an employer is not permitted to discharge an employee for being absent from work due to an allowed injury for which the employee is receiving TTD compensation.

*Coolidge*, 797 N.E.2d at 69-70.

      In this case, Woody was terminated because he was off work for twelve months which is the maximum length of workers' compensation leave permitted by the Policy. The twelve months includes the time period between January 23, 2002 and April 1, 2002, during which Woody was off work and receiving TTD benefits, the time period between June 21, 2002 and January 27, 2003, during which Woody was off work and receiving TTD benefits and the time

period between January 28, 2003, and April 19, 2003, during which Woody was off work and not eligible for TTD benefits. Thus, the twelve month period that forms the basis for Woody's termination includes about nine months during which Woody was off work and receiving TTD benefits and about three months during which Woody was off work and not receiving any workers' compensation benefits.

Sears's decision to terminate Woody for failure to comply with the Policy is flawed in two respects. First, and most important, the decision by Sears does not comport with the reasoning set forth in *Coolidge*. A large part of the twelve months of absence that was the basis for Woody's termination was the time that he was off work due to a work-related injury and was eligible for and receiving TTD benefits. A unanimous Ohio Supreme Court in *Coolidge* reasoned that employees injured at work have a right to compensation and whatever period of absence is medically necessary and it would be inconsistent to allow the employer to terminate the employee solely because of the disability for which the employee is being compensated. The Ohio Supreme Court also determined that Ohio policy embodied in the Workers' Compensation Act can be effectuated only if an employer is not permitted to terminate an employee from work due to an injury for which the employee is receiving TTD compensation.

A narrow reading of *Coolidge* would indicate that Woody does not have a claim because he was not receiving TTD benefits when his employment was terminated. However, the reasoning and policy set forth by the Ohio Supreme Court in *Coolidge* does not support such a narrow reading in Woody's case. Allowing Sears to terminate Woody on April 19, 2003, would mean that Woody was penalized for taking nine months of TTD leave and benefits. This is clearly not what the Ohio Supreme Court envisioned based upon the reasoning set forth in

*Coolidge*. According to the Ohio Supreme Court, Woody should not be penalized because of a disability that occurred at work and was recognized under Ohio's Workers' Compensation Act.

A second reason that the decision by Sears to terminate Woody is flawed is that Sears did not follow its own policy. For at least three months of the twelve months that Sears used as a basis for Woody's terminating his employment, he was not on workers' compensation leave and thus not subject to the Policy. Upon Sears's Motion, Woody's workers' compensation benefits ceased on January 28, 2003. Also, Sears's now argues that Woody's reasons for not returning to work after January 28, 2003, are not acceptable to Sears and, therefore, cannot be considered approved workers' compensation leave as required by the Policy. The analysis next turns to the arguments set forth by Sears.

Sears first argues that *Coolidge* does not apply because Woody was not receiving TTD benefits at the time he was terminated. However, as set forth above, a broader view of *Coolidge* applies to the facts of this case. Based upon the Ohio Supreme Court's reasoning in *Coolidge*, Woody should not be penalized because of a work-related disability recognized under the Ohio Workers' Compensation Act.

Sears next argues that it had a legitimate basis to terminate Woody pursuant to the Policy. However, as set forth above, the Policy is not, in Woody's case, consistent with the Ohio Supreme Court's reasoning in *Coolidge*. Also, Sears did not follow the Policy when it terminated Woody.

Sears next argues that Woody failed to provide medical documentation of his status in response to its letter of March 18, 2003, and failed to contact Sears to discuss accommodations for alternate work. However, these allegations are irrelevant because Woody was terminated in a

-11-

large part for actions that took place before the letter of March 18, 2003.

Finally, Sears argues that Woody failed to comply with the time requirements applicable to Coolidge claims. The time requirements, according to Sears, are a ninety-day notice and 180-day limitation for legal action. However, as acknowledge by Sears, *Coolidge* says nothing about these time requirements.

According to Sears, *Brooks* imports the statute of limitation time requirements contained in R.C. 4123.90 into a *Coolidge* claim. However, the *Brooks* court determined that the plaintiff did not have a *Coolidge* claim and, instead, had a public policy claim based upon R.C. 4123.90 with its attendant statute-of-limitations requirements. More importantly, after Brooks was decided, a different Ohio appeals court addressing a Coolidge claim determined that "imposing the statutory and notice requirements under R.C. 4123.90 would run counter to the [S]upreme [C]ourt's reasoning in Coolidge…" *Bickers*, 2006 WL 305442 at *4. Therefore, none of the arguments made by Sears have merit.

## CONCLUSION

There are no genuine issues of material fact in this dispute. Regarding the law, Woody's case is legally indistinguishable from the standpoint of the Ohio public policy set forth in *Coolidge*.

Sears terminated Woody's employment in violation of Ohio public policy. Therefore, Woody is entitled to judgment as a matter of law. Woody's Motion for Summary Judgment is GRANTED and Sears's Motion for Summary Judgment is OVERRULED.

Sears sought to strike Woody's Reply and Affidavit. (Doc. #19.) However, it was not necessary to consider Woody's Reply and Affidavit to resolve the Motions for Summary

Judgment. Therefore, the Motion To Strike filed by Sears is MOOT. Woody's damages remain to be adjudicated.

**DONE and ORDERED** in Dayton, Ohio, this sixth day of June, 2006.

s/Thomas M. Rose

———————————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record